## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 16-CIV-21373-JAL


BARBARA BRUSH, individually and on behalf of all
others similarly situated,

            Plaintiff,

v.

MIAMI BEACH HEALTHCARE GROUP, LTD. d/b/a
AVENTURA HOSPITAL AND MEDICAL CENTER, a
Florida Limited Partnership, and HCA-EMCARE
HOLDINGS, LLC d/b/a/ VALESCO VENTURES, a
Delaware Corporation,

            Defendants.

_____/


## DEFENDANTS' MOTION TO DISMISS THE COMPLAINT


Dan Gelber, FBN 512877
Freddy Funes, FBN 87932
Adam M. Schachter, FBN 647101
GELBER SCHACHTER & GREENBERG
1221 Brickell Avenue, Suite 2010
Miami, FL 33131
Tel: (305) 728-0954
Fax: (305) 728-0951

*Attorneys for Defendant HCA-EmCare
Holdings, LLC d/b/a Valesco Ventures*

Walter J. Taché, FBN 28850
Stephen J. Bronis, FBN 145970
Gavrila A. Brotz, FBN 34594
Magda C. Rodriguez, FBN 72688
CARLTON FIELDS JORDEN BURT, P.A.
100 SE Second Street, Suite 4200
Miami, FL 33131
Tel: (305) 530-0050
Fax: (305) 530-0055

*Attorneys for Defendant Miami Beach
Healthcare Group, Ltd d/b/a Aventura
Hospital and Medical Center*

PRELIMINARY STATEMENT ............................................................ 1

STATEMENT OF FACTS ................................................................. 3

ARGUMENT .................................................................................. 4

I.     THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(b)(1)
BECAUSE PLAINTIFF LACKS ARTICLE III STANDING. ......................... 4

     A.     Plaintiff Does Not Plead an Injury-in-Fact. ............................... 5

     B.     Plaintiff's Alleged Injury is Not Reasonably Traceable to the Improper
Data Use at Aventura. .......................................................... 6

     C.     Plaintiff's Generalized Allegations of Harm Are Insufficient to Confer
Standing. .......................................................................... 7

          1.     Increased Risk of Future Injury. ...................................... 8

          2.     Monitoring Costs. ....................................................... 9

          3.     Diminished Value of Services. ....................................... 10

II.     THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(b)(6)
BECAUSE PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF
MAY BE GRANTED. .................................................................... 11

     A.     The Second Amended Complaint Does Not Meet the Pleading Standard of
Rule 8(a). .......................................................................... 12

          1.     Plaintiff Relies on Conclusory, Speculative Allegations. ........ 12

          2.     Plaintiff Engages in Group Pleading. ................................ 12

     B.     Plaintiff Fails to State a Claim for Negligence. ........................ 13

          1.     Plaintiff Has Failed to Plead that Defendants' Actions Were the
Proximate Cause of any Alleged Injury. ............................ 13

     C.     Plaintiff Fails to State a Claim for Breach of Express or Implied Contract. ........ 14

          1.     The Only Valid Contract Between Plaintiff and the Hospital is the
Conditions of Admission, which was Not Breached. .............. 15

          2.     A Breach of Contract Claim Cannot be Premised on a Violation of
HIPAA. .................................................................... 17

i

|   |   | 3. | A Breach of Contract Claim Cannot be Premised on a Violation of Florida Statute Section 395.3025. | 18 |

      D.     Plaintiff Fails to State a Claim for Unjust Enrichment. ....................................... 18

            1.     An Express Contract Governs Plaintiff's Relationship with the Hospital. ..................................................................................................... 18

            2.     Plaintiff's Claim Is Premised on Alleged Actions of the Hospital. .......... 19

III.     ALL CLAIMS ARE BARRED BY THE RELEVANT STATUTES OF LIMITATIONS. ................................................................................................. 20

      A.     The Negligence Claim is Time-Barred. ................................................... 21

      B.     The Breach of Express Contract Claim is Time-Barred. ..................................... 22

      C.     The Claims for Breach of Implied Contract and for Unjust Enrichment are Time-Barred. ................................................................................................ 22

IV.     PLAINTIFF'S CLASS ALLEGATIONS ARE UNTENABLE AS PLEADED. ............ 23

      A.     Plaintiff's Allegations Regarding the Overpayment Class Are Untenable. .......... 23

      B.     Plaintiff's Allegations Regarding the Identity Theft Class Are Untenable. ......... 25

CONCLUSION ...................................................................................................... 30

Defendants Miami Beach Healthcare Group, Ltd. d/b/a Aventura Hospital and Medical Center ("Aventura" or the "Hospital") and HCA-EmCare Holdings, LLC d/b/a Valesco Ventures ("Valesco") hereby move to dismiss the Class Action Complaint and Demand for Jury Trial (DE 1, the "Complaint") in its entirety for lack of subject matter jurisdiction and for failure to state a claim pursuant to Federal Rules of Civil Procedure 8(a), 12(b)(1), and 12(b)(6).

## PRELIMINARY STATEMENT

The Complaint represents the fourth attempt by Plaintiff's counsel – and the third named plaintiff – to manufacture a class action against Defendants following a data breach discovered in 2014.  Plaintiff Larry Gilmore filed a complaint on December 3, 2014, and a subsequent amended complaint on February 19, 2015.  *See Gilmore v. Miami Beach Healthcare Group, Ltd.*, No 14-cv-24583-JEM (S.D. Fla.).  After Defendants filed a motion to dismiss arguing that the plaintiff lacked standing and failed to state a claim, Plaintiff's counsel filed a second amended complaint on May 5, 2015, substituting Kellie Lynn Case as the named plaintiff.  Defendants again moved to dismiss, and Judge Jose E. Martinez dismissed the second amended complaint in its entirety, ruling that the plaintiff had failed to allege an injury in fact and therefore lacked standing.  *See Case v. Miami Beach Healthcare Group, Ltd.*, No. 14-cv-24583, --- F. Supp. 3d ----, 2016 WL 1622289 (S.D. Fla. Feb. 26, 2016).

This Complaint fares no better.  Plaintiff alleges that she was a patient at the Hospital in 2008 and that, in 2014, somebody filed a false tax return in her name.  There is no allegation that the tax filing caused any concrete injury to Plaintiff, much less one that is traceable to the alleged data breach.  For this reason, Plaintiff – like the two previous named plaintiffs – lacks Article III standing.  Plaintiff also repeats the same alleged harm that the Court already found insufficient to confer standing:  (*i*) an increased risk of future injury, (*ii*) monitoring costs to guard against potential future injury, and (*iii*) diminished value of services rendered by the Hospital.

Even if Plaintiff had standing, the factual allegations in the Complaint fall far short of stating a claim under Florida law for negligence, breach of contract, or unjust enrichment. Plaintiff's negligence claim fails because Plaintiff does not adequately allege a causal nexus between the data breach and any alleged damages. Plaintiff asserts breach of contract claims but is unable to identify any provision of any contract that addresses data security. Plaintiff's contract claims amount to nothing more than unsupported accusations of purported violations of federal and state privacy standards, which provide no private right of action. As to unjust enrichment, Plaintiff's claim fails under Florida law because an express contract governs her relationship with Defendants and because an unjust enrichment claim cannot be premised on allegations of "wrongful" behavior.

In any event, because Plaintiff was a patient at the Hospital in 2008 and her claims are premised on the theory that she was damaged by Defendants' alleged failure to implement adequate data security, each of her claims is time-barred under the relevant Florida statutes of limitations.

Plaintiff's class allegations are untenable on their face. Plaintiff alleges two separate classes:  the so-called "Overpayment Class," comprised of individuals whose information was accessed in the data breach; and (in implicit recognition of the inadequacy of the Overpayment Class) the so-called "Identity Theft Class," comprised of individuals whose information was accessed in the data breach and subsequently misused. Judge Martinez has already held that the members of the Overpayment Class lack standing because they do not allege misuse of their information, much less any harm resulting from that misuse. *Id*. at *3-4. The Identity Theft Class – which is wholly subsumed in the Overpayment Class – also lacks standing because they do not allege any concrete harm, as discussed above. The Identity Theft Class also suffers from

107904958.1

numerous fundamental deficiencies that will preclude certification under Rule 23, including an overwhelming predominance of individualized issues, lack of typicality, and lack of ascertainability.  Accordingly, if any claims were to survive this motion, this action should focus on certification issues first so that the issue of whether this is properly a class or individual action can be addressed in an efficient manner.

For the foregoing reasons, the Complaint should be dismissed with prejudice.

### **STATEMENT OF FACTS**

Plaintiff alleges that she received medical care at Aventura in October 2008.  (Compl. ¶ 43.)  At that time, Plaintiff signed the Hospital's Conditions of Admission (attached as Exhibit A-2, hereinafter "COA"), and also received a copy of the Hospital's Notice of Privacy Practices (attached as Exhibit A-3, hereinafter the "Privacy Notice" or "NPP").[1]

The Conditions of Admission included an acknowledgment that Plaintiff had "received the hospital's Notice of Privacy Practices, which describes the ways in which the hospital may use and disclose [her] healthcare information for its treatment, payment, healthcare operations and other described and permitted uses and disclosures" and a consent to the use and disclosure of her information as set forth therein.  (COA ¶ 11.)  The Privacy Notice listed the various ways that the Hospital was permitted to use and disclose health information, and it outlined certain rights of patients with respect to access to their health record.  (NPP.)  Although Plaintiff repeatedly alleges that the Privacy Notice "promises" and contains statements about the security of her information, no such promise or statement appears in the document.  (Compl. ¶¶ 20, 44, 74-78, 82, 85, 96; NPP.)  In fact, the Privacy Notice does not address data security at all.

---

[1] The COA and NPP are authenticated by and attached as exhibits to the Declaration of Alisa Bert ("Decl.").  *See* Ex. A.   The NPP is also available on the Hospital's website at http://aventurahospital.com/about/privacy-notice.dot.  (Compl. ¶ 18 n.1.)

3

As a condition of admission to the Hospital, Plaintiff alleges that she provided the hospital with personal information. (Compl. ¶ 44.) Plaintiff alleges that – during the period of September 2012 through June 2014 – one of Defendants' employees accessed patient records, including hers, without authorization. (Compl. ¶¶ 7-8, 49.) Plaintiff further alleges that this access resulted in the sale or disclosure of her information to a third party, who subsequently used that information to "file a fraudulent tax return using her name and Social Security number." (Compl. ¶ 50.) Importantly, Plaintiff does not disclose the year for which the fraudulent tax return was filed, and fails to allege that it resulted in any financial or economic harm. Plaintiff asserts negligence, breach of contract, breach of implied contract, and unjust enrichment claims based on the alleged improper access to her information.

## **ARGUMENT**

### I.     THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(b)(1) BECAUSE PLAINTIFF LACKS ARTICLE III STANDING.

Plaintiff lacks standing under Article III because she does not allege an injury that is "[1] concrete, particularized, and actual or imminent; [2] fairly traceable to the challenged action; and [3] redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (citation omitted). Plaintiff bears the burden of establishing that the Court has jurisdiction to hear her claims. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1248 n.2 (11th Cir. 2005). In the context of a putative class action, Plaintiff "must allege and show that [she] *personally* ha[s] been injured, not that injury has been suffered by other, unidentified members of the class to which [she] belong[s] and which [she] purport[s] to represent." *Warth v. Seldin,* 422 U.S. 490, 502 (1975) (emphasis added). Furthermore, as the Supreme Court recently reaffirmed, "an

4

injury in fact must be both concrete *and* particularized. . . . A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016).

### A.   Plaintiff Does Not Plead an Injury in Fact.

Plaintiff fails to plead that she suffered an injury in fact as a result of the alleged data breach.  Plaintiff alleges only that a false tax return was filed in her name and does not allege any direct financial harm resulting from that filing.  (Compl. ¶ 50.)  As the Supreme Court recently emphasized, an injury in fact must be "concrete" – *i.e.*, "real, and not abstract."  *Spokeo*, 133 S. Ct. at 1548.  Absent any allegation of financial harm or other injury resulting from the alleged tax filing, Plaintiff fails to plead a concrete injury.   *See In re SuperValu, Inc., Customer Data Sec. Breach Litig.*, No. 14-MD-2586, 2016 WL 81792, at *5 (D. Minn. Jan. 7, 2016) (no injury in fact where plaintiffs alleged an authorized charge to one plaintiff's credit card, with no allegation that the charge caused any monetary losses); *Peters v. St. Joseph Servs. Corp.*, 74 F. Supp. 3d 847, 857 (S.D. Tex. 2015) (no injury in fact where plaintiff alleged an attempted fraudulent purchase on her credit card and access to personal email account, with no allegation of resulting financial harm); *Hammond v. The Bank of New York Mellon Corp.*, No. 08 Civ. 6060, 2010 WL 2643307, at *8 (S.D.N.Y. June 25, 2010) (no injury in fact where plaintiffs were reimbursed for unauthorized credit card charges).  By contrast, in *Resnick v. AvMed, Inc.*, the Eleventh Circuit held that an injury in fact was adequately pleaded because "Plaintiffs allege that they have become victims of identity theft *and have suffered monetary damages as a result*." 693 F.3d 1317, 1323 (11th Cir. 2012) (emphasis added).

Nor do the conclusory assertions that Plaintiff's information was not maintained in accordance with the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") or section 395.3025, Florida Statutes, provide Plaintiff with an injury on which standing may be based.  Even if those assertions were supported by factual allegations, they would fail as a matter

of law because there is no private right of action under either statute.  As the court made clear in *Polanco v. Omnicell, Inc.*:  "Because Plaintiff cannot assert a private right of action with respect to any alleged violations of HIPAA by Defendants, Plaintiff cannot claim any deprivation, and consequently, cannot establish a 'concrete and particularized' injury sufficient to confer standing here related to the 'loss' of her [information]."  988 F. Supp. 2d 451, 469 (D.N.J. 2013); *see also Crawford v. City of Tampa*, 397 Fed. App'x 621, 623 (11th Cir. 2010) (per curiam) (finding no private right of action under HIPAA); *Giarratano v. Judd*, No. 8:10-CV-2531-T-27TGW, 2012 WL 1191145, at *4 (M.D. Fla. Apr. 10, 2012) (same).

Furthermore, even if the statutes did provide private rights of action, as the Supreme Court made clear in *Spokeo*, an alleged violation of either statute alone would not cure Plaintiff's failure to state an injury that is both concrete and particularized:  "Article III standing requires a concrete injury even in the context of a statutory violation."  133 S. Ct. at 1543.

**B.     Plaintiff's Alleged Injury is Not Fairly Traceable to the Alleged Data Breach.**

Nor is Plaintiff's alleged injury — the filing of the false tax return – "fairly traceable" to the alleged data breach.  *Clapper*, 133 S. Ct. at 1147.  Although Plaintiff alleges that the individual responsible for the data breach accessed information from *tens of thousands* of patients – and the data breach occurred *two to four years* prior to the filing of her Complaint – Plaintiff alleges only a *single* instance of data misuse.   (Compl. ¶¶ 22, 50.) (emphasis added)  Notably, neither of the previous unsuccessful plaintiffs in this case, Gilmore and Case, alleged any misuse of their personal information.  In *SuperValu*, the court held that, where the data breach affected customer data at over 1,000 stores and occurred more than a year before the complaint was filed, "the isolated single instance of an unauthorized charge is not indicative of data misuse that is fairly traceable to the Data Breach." 2016 WL 81792, at *5 (D. Minn. Jan. 7,

6

2016) (emphasizing that, just like Plaintiff's false tax return allegation, the alleged charge was for "an unspecified amount on an unspecified date").

As Plaintiff acknowledges, data breaches are, unfortunately, commonplace in today's digital world.  Nevertheless, Plaintiff provides no factual basis to support the conclusion that the information used to file the alleged fraudulent tax return was obtained through the alleged data breach at Aventura.  One need only open a newspaper to learn about a new entity that has been targeted and/or victimized by cybercriminals.  As noted by the United States Government Accountability Office ("GAO") in its June 2007 report on data breaches, "available evidence suggests that breaches of sensitive information have occurred frequently and under widely varying circumstances"; the GAO estimated that from January 2005 through December 2006, 572 breaches were reported in the news media which affected more than 80 million records.[2]  Plaintiff admits that on the "cyber black-market," a stolen Social Security number "only sells for $1."  (Compl. ¶¶ 41-42.)  And, Plaintiff states that personal medical information is particularly valued by cybercriminals, citing research indicating that "[a] stolen medical identity has a $50 street value."  (Compl. ¶ 42.)  Medical identity theft – the "fastest-growing type of identity theft" – was estimated in 2012 to have affected 1.5 million Americans.[3]  The frequency of data breaches renders even less plausible Plaintiff's claim that the false tax return is "fairly traceable" to the alleged data breach.

---

[2] *See* Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft is Limited; However, the Full Extent is Unknown (June 2007), United States Government Accountability Office, *available at* http://www.gao.gov/new.items/d07737.pdf.

[3] *See Study: Few Aware of Medical Identity Theft Risk*, Claims Journal (June 14, 2012), http://www.claimsjournal.com/news/national/2012/06/14/208510.htm (last visited June 6, 2016).

**C.**     **Plaintiff's Generalized Allegations of Harm Are Insufficient to Confer Standing.**

Having failed to allege that she has suffered any concrete injury, Plaintiff falls back on allegations of harm that have already been rejected by the Court as insufficient to confer Article III standing:  (*i*) an increased risk of future injury; (*ii*) monitoring costs to guard against potential future injury; and (*iii*) diminished value of services rendered by the Hospital.  (Compl. ¶¶ 51, 56, 71, 86.)  *See Case*, 2016 WL 1622289 at *3-4.

**1.**     **Increased Risk of Future Injury.**

Plaintiff's conclusory assertion that she faces "increased risk of future harm" related to the use of her information is insufficient for Article III standing.  (Compl. ¶¶ 71, 87, 99.)  In *Clapper*, the Supreme Court emphatically reiterated that "'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient." 133 S. Ct. at 1147 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)) (emphasis in original).  The Court rejected the Second Circuit's holding that a plaintiff has standing if there is an "objectively reasonable likelihood" that an alleged future harm will occur, finding that standard "inconsistent" with the requirement that "threatened injury must be certainly impending to constitute injury in fact."  *Id.* at 1147-48.

Plaintiff alleges no facts whatsoever indicating that future fraudulent use of her information is "certainly impending."  Any increased risk of future injury alone, therefore, is too uncertain to meet the legal standard for an "injury in fact" under *Clapper*.  Any allegation of the risk of future injury depends entirely on speculation regarding actions that might be taken by unidentified third parties.  *See Clapper*, 133 S. Ct. at 1150 ("We decline to abandon our usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors.").  Since *Clapper*, courts have held similarly.  For example, in *In re Science*

8

*Applications International Corporation (SAIC) Backup Tape Data Theft Litigation*, the court applied *Clapper* in holding that the allegation that, due to a data breach, the plaintiffs were "9.5 times more likely than the average person to become victims of identity theft" did not confer standing: "The degree by which the risk of harm has increased is irrelevant – instead, the question is whether the harm is certainly impending." 45 F. Supp. 3d 14, 25 (D.D.C. 2014); *see also Peters*, 74 F. Supp. 3d at 854-57 (S.D. Tex. 2015) (holding allegation of increased risk of identity theft insufficient to confer standing under *Clapper*); *Galaria v. Nationwide Mut. Ins. Co.*, 998 F. Supp. 2d 646, 654-57 (S.D. Ohio 2014) (same); *Polanco*, 988 F. Supp. 2d at 466 (same); *Yunker v. Pandora Media, Inc.*, 2013 WL 1282980, at *5 (N.D. Cal. Mar. 26, 2013) (same).

Indeed, even before *Clapper*, a clear majority of courts had held that an increased risk of identity theft was insufficient. In *Reilly v. Ceridian Corp.*, for example, the Third Circuit applied the "certainly impending" requirement later emphasized by the Supreme Court in *Clapper*, holding that "allegations of hypothetical, future injury are insufficient to establish standing." 664 F.3d 38, 42 (3d Cir. 2011).[4]

### 2. Monitoring Costs.

Plaintiff's allegation of harm in the form of past and future expenses for "credit monitoring and identity theft insurance," time spent "scrutinizing bank statements, credit card

---

[4] *See also Whitaker v. Health Net of Cal., Inc.*, No. CIV S-11-0910 KJM-DAD, 2012 WL 174961, at *2 (E.D. Cal. Jan. 20, 2012) (finding no standing based on alleged increased risk of identity theft resulting from data breach); *Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 WL 2643307 at *2 (same); *Allison v. Aetna, Inc.*, No. 09-2560, 2010 WL 3719243, at *5 (E.D. Pa. Mar. 9, 2010) (same); *Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d 1046, 1052 (E.D. Mo. 2009) (same); *Hinton v. Heartland Payment Sys., Inc.*, No. 09-594 (MLC), 2009 WL 704139, at *1 (D.N.J. Mar. 16, 2009) (same); *Randolph v. ING Life Ins. & Annuity Co.*, 486 F. Supp. 2d 1, 8 (D.D.C. 2007) (same); *Key v. DSW, Inc.*, 454 F. Supp. 2d 684, 689 (S.D. Ohio 2006) (same); *Bell v. Acxiom Corp.*, No. 4:06CV00485-WRW, 2006 WL 2850042, at *2 (E.D. Ark. Oct. 3, 2006) (same).

statements, and credit reports," and time spent "initiating fraud alerts," relies on a theory that was expressly rejected in *Clapper*.[5]  (Compl. ¶¶ 56, 71, 87, 99.)   The Supreme Court held that incurring costs "as a reasonable reaction to a risk of harm" is insufficient to confer standing:  a party "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending."  133 S. Ct. at 1151.  "If the law were otherwise, an enterprising plaintiff would be able to secure a lower standard for Article III standing simply by making an expenditure based on a nonparanoid fear."  *Id*.  Courts have rejected such attempts to base standing on costs incurred based on a plaintiff's fear of future harm.  *See*, *e.g.*, *Peters*, 74 F. Supp. 3d at 856 (dismissing plaintiff's claim that her information had been stolen and misused following data breach at health service provider, and noting that plaintiff would "still fall short of the constitutional standard if she asserted any money spent prophylactically on credit monitoring services" out of fear of future third-party wrongdoing); *Reilly*, 664 F.3d at 46 ("[W]e conclude that Appellants' alleged time and money expenditures to monitor their financial information do not establish standing, because costs incurred to watch for a speculative chain of future events based on hypothetical future criminal acts are no more 'actual' injuries than the alleged 'increased risk of injury' which forms the basis for Appellants' claims.").

### 3.    Diminished Value of Services.

Plaintiff's attempt to recast her inadequate allegations of harm as "damages in an amount equal to the difference in value of the secure healthcare [she] paid for and the insecure healthcare

---

[5] Plaintiff makes an additional conclusory allegation that she and the Identity Theft Class also "suffered and will continue to suffer . . . decreased credit scores and ratings."  (Compl. ¶¶ 71, 87, 99.)  Plaintiff nowhere alleges in the Complaint, however, that the fraudulent tax return filed in her name allegedly due to improper data use at Aventura negatively impacted her credit score or rating.

[she] received" fares no better.  (Compl. ¶¶ 11, 86, 98.)  Plaintiff's "diminished value" allegation is merely another way of asserting that she was harmed by data misuse at Aventura, without identifying any actual injury sufficient to confer standing.  The cost of data security is extrinsic to the health care services that a patient pays for when he or she visits a hospital.  Allegations of overpayment or diminished value of services do not confer Article III standing where, as here, the cost of data protection is extrinsic to the actual purchased service.  *See Case*, 2016 WL 1622289 at *3-4 ("this Court is not persuaded that Defendants' charges to Plaintiff explicitly or implicitly included the cost of data protection").  Other courts have also held that claims for alleged overpayment or diminished value of services do not confer Article III standing where the alleged cost of data protection is extrinsic to the purchased service.  *See, e.g.*, *In re LinkedIn User Privacy Litig.*, 932 F. Supp. 2d 1089, 1093 (N.D. Cal. 2013) (plaintiff failed to allege that customers provided additional consideration for the security services they were not provided, and rejecting plaintiff's overpayment/benefit of the bargain theory); *Austin-Spearman v. AARP & AARP Servs. Inc.*, 119 F. Supp. 3d 1, 12 (D.D.C. 2015) (same).

## II.    THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(b)(6) BECAUSE PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

On behalf of herself and the Overpayment Class, Plaintiff alleges causes of action for breach of express contract, breach of implied contract, and unjust enrichment.  On behalf of herself and the Identity Theft Class, Plaintiff alleges breach of express contract, breach of implied contract, and negligence.  Each of these counts must be dismissed for failure to state a cause of action.

### A.   The Complaint Does Not Meet the Pleading Standard of Rule 8(a).

#### 1.   Plaintiff Relies on Conclusory, Speculative Allegations.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*   The Complaint's speculative and conclusory allegations fail to meet the pleading standards of Rule 8(a).   Under Rule 8, "conclusory allegations in the complaint are not entitled to assumptions of truth." *Formula LLC v. RSUI Indem. Co.*, No. 09-60592-CIV, 2009 WL 2342455, at *1 (S.D. Fla. July 28, 2009) (citing *Iqbal*, 556 U.S. at 680-81).

For example, Plaintiff fails to allege any facts indicating that Defendants' security measures were not "appropriate" or in accordance with HIPAA, Florida law, or other "industry standards." (Compl. ¶¶ 28-29, 32-33.)   Plaintiff offers only a general summary of the malady of identity theft and fails to allege *a single fact* of direct relevance to Plaintiff's conclusory assertions about Defendants' data security systems. (Compl. ¶¶ 36-42.)   Plaintiff merely recites portions of HIPAA and Florida statutes and then concludes – with no factual support – that Defendants failed to meet those standards. (Compl. ¶¶ 28-29, 31-35.)   Plaintiff's exclusive reliance throughout the Complaint on broad and conclusory assertions, unsupported by facts, falls short of the pleading standard of Rule 8(a).

#### 2.   Plaintiff Engages in Group Pleading.

Plaintiff also violates Rule 8(a) by improperly referring to both defendants together without describing what actions each individual defendant took. *See Fifth Third Bank v.*

12

*Barkauskas*, No. 2:12-cv-577-FTM-SPC, 2012 WL 5507831, at *1 (M.D. Fla. Nov. 14, 2012) (dismissing claims that referred to "defendants" without differentiation); *Lindquist v. Linxian*, No. 11-23876-Civ, 2012 WL 3811800, *5 (S.D. Fla. Sept. 4, 2012) (same); *Bentley v. Bank of Am., N.A.*, 773 F. Supp. 2d 1367, 1373 (S.D. Fla. 2011) (same); *Pierson v. Orlando Reg'l Healthcare Sys., Inc.*, 619 F. Supp. 2d 1260, 1271-74 (M.D. Fla. 2009) (same).

Plaintiff's patchwork pleading ascribes all allegations to both "Defendants," failing to specify which defendant is ascribed to what particular conduct.  Plaintiff's initial allegation that Defendants "jointly work together to provide healthcare-related services to patients" at the Hospital is merely a boilerplate allegation that does not relieve Plaintiff of her pleading burden. (Compl. ¶ 2.)

### B.      Plaintiff Fails to State a Claim for Negligence.

An action for negligence requires a plaintiff to prove:  "(1) that the defendant owed a duty of reasonable care to the plaintiff; (2) that the defendant breached that duty; (3) that the breach was the proximate cause of the injury to the plaintiff; and (4) that the plaintiff suffered damages."  *Hasenfus v. Secord*, 962 F.2d 1556, 1559-60 (11th Cir. 1992).  Failure to establish any one of these elements "is fatal to the plaintiff's case."  *Id*. at 1560.

#### 1.      Plaintiff Fails to Plead a Breach of Duty.

Plaintiff fails to plead a breach of duty because, as discussed above, Plaintiff alleges no facts supporting her conclusory assertions that Defendants did not comply with applicable regulations or industry standards regarding the safeguarding of personal information.  (Compl. ¶¶ 25-35.)

#### 2.      Plaintiff Fails to Plead Proximate Causation.

Plaintiff alleges that the single fraudulent tax return was filed using only "her name and Social Security number."  (Compl. ¶ 50.)  Plaintiff provides no factual basis whatsoever – other

13

than the occurrence of the data breach itself – to support the conclusion that the information used to file the false return was obtained through said breach.  These allegations are inadequate to establish injury in fact, as discussed above; they are even less adequate to establish the requisite element of causation for Plaintiff's negligence claim.

The Eleventh Circuit's decision in *Resnick* underscores the insufficiency of her negligence claim.  The *Resnick* plaintiffs articulated numerous facts about what information was stolen and how their actual identities were co-opted to show a "logical connection" and "nexus between the two events [the data breach and the subsequent identity theft] that includes more than a coincidence of time and sequence."  693 F.3d at 1327.  The Court in *Resnick* explicitly stated that determining the existence of such a nexus was a close call:  "*Had Plaintiffs alleged fewer facts, we doubt whether the Complaint could have survived a motion to dismiss*.  However, Plaintiffs have sufficiently alleged a nexus between the data theft and identity theft and therefore meet the federal pleading standards."  *Id*. (emphasis added).

Unlike the plaintiffs in *Resnick*, Plaintiff here relies *exclusively* on the "allegations of time and sequence," in the apparent hope that the Court will overlook the complete absence of factual support for her conclusion that improper data use at Aventura was the cause of any alleged misuse of her personal information.  Even the timing is uncertain, as Plaintiff fails even to allege when the false tax return was filed.

### C.    Plaintiff Fails to State a Claim for Breach of Express or Implied Contract.

Plaintiff fails to state a claim for breach of express contract and, in the alternative, a claim for breach of implied contract, for the simple reason that there is no contract between the Hospital and Plaintiff that includes a promise to securely maintain Plaintiff's information.  Plaintiff's claims are nothing more than alleged violations of HIPAA and section 395.3025, Florida Statutes – neither of which provides a private cause of action.  Even if HIPAA or section

14

395.3025 provided a private right of action, a purported violation of those statutes would not suffice where, as here, a plaintiff does not allege an injury sufficient to confer Article III standing. *Spokeo*, 133 S. Ct. at 1543.

### 1.    The Only Valid Contract Between Plaintiff and the Hospital is the Conditions of Admission, which was Not Breached.

The only valid and enforceable contract between Plaintiff and Defendants – the Conditions of Admission – contains no promise to maintain Plaintiff's protected health information.  (Compl. ¶ 74; *see* COA.)

As discussed above, the Hospital is required to provide a notice of privacy practices to all patients containing specific provisions delineated by HIPAA and the regulations promulgated thereunder.  *See* 45 C.F.R. § 164.520(a), (b).  (*See* NPP.) This document simply enumerates the various ways in which a patient's health information may be used by the Hospital – *e.g.*, for treatment, payment, health care operations, and research – and it outlines the patient's rights with respect to access his or her health record.  *Id*.  The exact provision of the Privacy Notice that Plaintiff relies on to allege a contractual obligation by the Hospital to Plaintiff is taken, verbatim, from the regulatory requirements. (Compl. ¶¶ 18, 76.)  *See* 45 C.F.R. § 164.520(b)(1)(v)(A)-(B). The Hospital's Privacy Notice is not a contract containing negotiated terms, but rather an obligation pursuant to HIPAA.

Furthermore, to the extent Plaintiff asserts that the Hospital's pre-existing, federally mandated obligation to maintain the privacy of Plaintiff's health information created a contractual relationship between the Plaintiff and Hospital, this claim fails.   *First*, under fundamental common law contractual principles, the Privacy Notice fails to create a contract due to the lack of acceptance by Plaintiff or consideration.  *See*, *e.g.*, *Senter v. JPMorgan Chase Bank, N.A.*, 810 F. Supp. 2d 1339, 1345 (S.D. Fla. 2011) (finding valid contract requires

acceptance and consideration).   Here, Plaintiff simply acknowledged receipt of the Privacy Notice in the Conditions of Admissions. (COA ¶ 15).   *Second*, a preexisting obligation by the Hospital to provide the Privacy Notice to its patients cannot amount to the required consideration to support the presence of a valid contract.   *Senter*, 810 F. Supp. 2d at 1346 ("Under Florida law, the performance of a pre-existing duty does not constitute the consideration necessary to support a valid contract."); *Denarii Sys., LLC v. Arab*, No. 1:12-CV-24239-JJO, 2013 WL 500826, *4 (S.D. Fla. Feb. 11, 2013) (same); *F.L. Stitt & Co. v. Powell*, 114 So. 375, 381 (Fla. 1927) (same).

Plaintiff's allegation that the Privacy Notice constituted a "promise" to safeguard data is not supported by the actual language of the Privacy Notice.  Eleventh Circuit law is clear that the actual language of the Privacy Notice controls and Plaintiff's contrary allegations are to be disregarded.[6]  *See In re Northlake Foods, Inc.*, 715 F.3d 1251, 1256-57 (11th Cir. 2013) (per curiam) (giving "no weight" to conclusory allegations "directly contradict[ed]" by terms of the underlying agreement); *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007) (holding that "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern").

Absent this failed allegation of a "promise," all that remains of Plaintiff's claim are the conclusory allegations that the Hospital did not safeguard patient information "in accordance with HIPAA, Fla. Stat. Ann. § 395.3025(4), and industry standards."  (Compl. ¶ 44.)  These conclusory, unsupported allegations do not state a claim for breach of contract.

---

[6] "[A] district court may consider an extrinsic document even on Rule 12(b)(6) review if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged."  *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811 (11th Cir. 2015).

### 2.     A Breach of Contract Claim Cannot be Premised on a Violation of HIPAA.

Plaintiff's breach of contract is premised on conclusory assertions of a HIPAA violation (Compl. ¶¶ 76, 80-81), but even if those assertions had been supported by factual allegations, Plaintiff's claims would still fail because HIPAA does not create a private right of action.  *Sneed v. Pan Am. Hosp.*, 370 Fed. App'x 47, 50 (11th Cir. 2010) (finding HIPAA does not expressly create a private cause of action, and, therefore, declines to create same); *Thompson v. U.S.*, 8:12-CV-1674-T-27AEP, 2014 WL 131765, at *7 (M.D. Fla. Jan. 14, 2014) (same); *Crawford*, 397 Fed. App'x at 623; *Giarratano*, No. 8:10-CV-2531-T-27TGW, 2012 WL 1191145 at *4 (same).

A plaintiff cannot bring a state law claim for breach of contract which is premised on the incorporation of a federal statute that does not provide a private right of action.  *See Miller v. Chase Home Finance*, 677 F.3d 1113, 1116-17 (11th Cir. 2012) (finding that plaintiff could not bring claims for breach of contract or promissory estoppel for breach of a federal statute with no implied or express private right of action); *Senter,* 810 F. Supp. at 1351- (same); *Broder v. Cablevision Sys. Corp.,* 418 F.3d 187, 198 (2d Cir. 2005) ("[A] federal court should not strain to find in a contract a state-law right of action for violation of a federal law under which no private right of action exists."); *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003) (holding that where "no private right of action exists under [the federal Davis-Bacon Act], the plaintiffs' efforts to bring their claims as state common-law claims are clearly an impermissible 'end run' around the [statute].").  To allow such a theory would undermine the Congressional intent to have the federal Department of Health and Human Services, Office of Civil Rights, regulate HIPAA compliance.  42 U.S.C. §§ 1320d-5, d-6.

### 3. A Breach of Contract Claim Cannot be Premised on a Violation of Section 395.3025, Florida Statutes.

Plaintiff's reliance on section 395.3025 fails for the same reason. (Compl. ¶¶ 44, 76.) Under Florida law, a violation of a statute can give rise to civil liability only if the statute indicates an intent to permit such a private right of action. *Murthy v. N. Sinha Corp.,* 644 So. 2d 983, 985-86 (Fla. 1994). There is no express private right of action under section 395.3025. Further, not only is the express intent absent from section 395.3025, but there is also no implicit intent to provide such a private right of action for a violation of this statute. *Hanney v. Garcia,* 8:13-CV-2928-T-36MAP, 2015 WL 1277991, at *2 (M.D. Fla. Mar. 20, 2015). Accordingly, Plaintiff should not be permitted to circumvent the intent of the Florida Legislature by being allowed to bring a private cause of action for a violation of this statute.

### D. Plaintiff Fails to State a Claim for Unjust Enrichment.

Plaintiff fails to state a claim for unjust enrichment because an unjust enrichment claim is inappropriate (*i*) where there is an express contractual relationship between the parties, and (*ii*) where the defendant's enrichment was due to alleged wrongful conduct.

### 1. An Express Contract Governs Plaintiff's Relationship with the Hospital.

Plaintiff's unjust enrichment claim is barred by the existence of an express contract governing Plaintiff's relationship with the Hospital. *See Zarrella v. Pac. Life Ins. Co.*, 755 F. Supp. 2d 1218, 1227 (S.D. Fla. 2010) ("No cause of action in unjust enrichment can exist where the parties' relationship is governed by an express contract."); *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. 1st DCA 2008) ("Florida courts have held that a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists

concerning the same subject matter.").[7]   Here, Plaintiff brings a claim for breach of express contract  (Compl. ¶¶ 80-81), and the parties do not dispute that the "Conditions of Admission" signed by Plaintiff is an express contract between the Hospital and Plaintiff and that it governs Plaintiff's relationship with the Hospital, including Plaintiff's consent to the release of her information for certain purposes and an acknowledgement that she has received the Privacy Notice.  (*See* COA ¶¶ 4, 7, 11.)   Under Florida law, the existence of that contract requires dismissal of Plaintiff's unjust enrichment claim.

### 2.   Plaintiff's Claim Is Premised on Alleged Wrongful Conduct.

Plaintiff's unjust enrichment claim also fails for the reason that it is premised on Defendants' alleged "wrongful" conduct.  "Where a plaintiff predicates their unjust enrichment claim on the wrongful conduct of a defendant, then the plaintiff's right of recovery, if any, arises from the wrong of the alleged tort rather than unjust enrichment."  *Tilton v. Playboy Entm't Grp*, No. 88:05-cv-692-T-30TGW, 2007 WL 80858, at *3 (M.D. Fla. Jan. 8, 2007).  "[T]he law of unjust enrichment is concerned solely with enrichments that are unjust *independently* of alleged wrongs."  *State v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1309 (S.D. Fla. 2005) (citing *Flint v. ABB, Inc.*, 337 F.3d 1326, 1330 n.2 (11th Cir. 2003)) (emphasis added).  The "paradigm examples of unjust enrichment are mistaken transfers," and "as soon as a claimant relies on a wrong to supply the unjust factor, . . . 'the right on which [the plaintiff] relies arises from that wrong, not from unjust enrichment.'"  *Id.* (quoting *Guyana Tel. & Tel. Co. v. Melbourne Int'l Commc'ns, Ltd.*, 329 F.3d 1241, 1245 n. 3 (11th Cir. 2003)); *see also Flint*, 337 F.3d at 1330 n.2

---

[7] Although alternative pleading is generally allowed under Rule 8, "an unjust enrichment claim can only be pled in the alternative if one or more parties contest the existence of an express contract governing the subject of the dispute," which is not the case here.  *Zarrella*, 755 F. Supp. 2d at 1227 (internal citation omitted).

("[W]hen the plaintiff relies on a wrong to supply the 'unjust factor,' the causative event is a *wrongful* enrichment rather than an *unjust* enrichment.") (emphasis added).

Plaintiff unambiguously rests her unjust enrichment claim on the purported wrongful conduct of Defendants, alleging that "Defendants should not be permitted to retain the money belonging to Plaintiff and the Overpayment Class members, because Defendants knowingly failed to implement the data management and security measures that Plaintiff and the Overpayment Class paid for." (Compl. ¶¶ 106-07.) Accordingly, Plaintiff's unjust enrichment claim must be dismissed for this reason as well. *See Tilton*, 2007 WL 80858 at *3 (dismissing unjust enrichment claim premised on allegations of wrongful conduct); *Tenet*, 420 F. Supp. 2d at 1309 (same); *Traditions Sr. Mgmt., Inc. v. United Health Adm'rs, Inc.*, No. 8:12-cv-2321, 2013 WL 3285419, at *4 (M.D. Fla. June 27, 2013) (same); *Union Pac. R. Co. v. Paragon Labs., Inc.*, No. 06-60873-CIV, 2006 WL 3709619, at *4 (S.D. Fla. Dec. 14, 2006) (same).

## III.   ALL CLAIMS ARE BARRED BY THE RELEVANT STATUTES OF LIMITATIONS.

Even if Plaintiff had stated a valid claim, none of those claims would be timely under Florida law. A cause of action accrues when the last element constituting the cause of action occurs. Plaintiff received healthcare services from Aventura in October 2008. (Compl. ¶ 43.) Plaintiff paid the portion of the bill for which she was directly liable, $183.60, to Aventura in December 2008. (Decl. ¶ 10;[8] Compl. ¶ 45.) The Complaint was filed on April 18, 2016.

---

[8] The Declaration provides additional information regarding the timing of Plaintiff's payment of $183.60 to Defendants. (Compl. ¶ 45.) The Court may consider documents outside the pleadings in evaluating a motion to dismiss where, as here, the document is central to Plaintiff's claims and the authenticity of the document is not subject to challenge. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

## A.    The Negligence Claim is Time-Barred.

The limitations period for a negligence claim is four years.  *See* § 95.11(3)(a), Fla. Stat. (2016).  A negligence claim accrues when the plaintiff suffers "loss or damage" as a result of the allegedly negligent conduct.  *Greenberg v. Wells Fargo Bank NA*, No. 14-CV-2071-T-17MAP, 2015 WL 1647964, at *2 (M.D. Fla. Apr. 14, 2015).

Plaintiff alleges that upon her admission to Aventura in October 2008, she "provide[d] Defendants with her Sensitive Information and agreed to receive and pay for services related to her healthcare."  (Compl. ¶ 44.)  Further, Plaintiff was allegedly harmed by Defendants' "fail[ure] to provide their patients' [sic] with the level of data protection that they promised and paid for."  (Compl. ¶ 7.)  "Defendants' conduct *harmed* each and every one of their paying patients (*including by exposing them all to an increased risk of data misuse*)."  (Compl. ¶ 10) (emphasis added).  Plaintiff thus claims to have incurred damages (*i.e.*, allegedly inadequate protection of her personal information) caused by Defendants' allegedly sub-standard data security practices.  These damages began when Defendants received and stored Plaintiff's information in October 2008 – more than four years prior to the filing of the Complaint.  That Plaintiff alleges that she subsequently incurred additional injury or that she did not immediately discover her injury, is irrelevant.  (Compl. ¶ 50.)  *See, e.g.*, *Davis v. Monahan*, 832 So. 2d 708, 710 (Fla. 2002) ("Aside from the provisions above for the delayed accrual of a cause of action in cases of fraud, products liability, professional and medical malpractice, and intentional torts based on abuse, there is no other statutory basis for the delayed discovery rule."); *Greenberg*, 2015 WL 1647964 at *2-3 (granting defendants' motion to dismiss negligence action where limitations period had run because plaintiffs pleaded damages which began to accrue more than four years prior, notwithstanding plaintiffs' other alleged damages).

### B.      The Breach of Contract Claims Are Time-Barred.

Plaintiff's breach of express and implied contract claims are also time-barred.  The limitations period for a breach of contract claim based on a written contract is five years, and for a claim based on a contract not reduced to writing, four years.  *See* §§ 95.11(2)(b), 95.11(3)(k), Fla. Stat. (2016).  "For purposes of the statute of limitations, a cause of action for breach of contract accrues at the time of the breach."  *Access Ins. Planners, Inc. v. Gee*, 175 So. 3d 921, 924 (Fla. 4th DCA 2015)  (citing *State Farm Mut. Auto. Ins. Co. v. Lee,* 678 So. 2d 818, 820 (Fla. 1996)); *see also Med. Jet, S.A. v. Signature Flight Support-Palm Beach, Inc.*, 941 So. 2d 576, 578 (Fla. 4th DCA 2006) ("Florida has followed this general rule that a cause of action for breach of contract accrues at the time of the breach, 'not from the time when consequential damages result or become ascertained.'").  This is so "regardless of whether the plaintiff knew that it had a claim" and even if plaintiff did not suffer damages until after the alleged breach. *Abbott Laboratories, Inc. v. Gen. Elec. Capital*, 765 So. 2d 737, 740 (Fla. 5th DCA 2000).

Plaintiff bases her breach of express contract claim on the premise that she "did not receive the entirety of the services she paid for and, as a result, she paid more [to Defendants] than she otherwise would have."  (Compl. ¶ 57; *see also id*. ¶¶ 85-97 ("[B]ecause Plaintiff … paid for privacy protections [she] did not receive … [she] did not receive the full benefit of [her] bargain.")).   Thus, even accepting Plaintiff's allegations as true, Defendants breached their express contract with Plaintiff *no later than* December 2008, more than seven years before Plaintiff filed the Complaint.

### C.      The Claim for Unjust Enrichment Is Time-Barred.

Plaintiff's claim for unjust enrichment is also time-barred.  Under Florida law, a cause of action for unjust enrichment accrues when the defendant knowingly and voluntarily accepts the benefits bestowed upon him.  *See Fowler v. Towse*, 900 F. Supp. 454, 460 (S.D. Fla. 1995).

22

Here, Defendants knowingly and voluntarily accepted payment in full for the services provided Plaintiff no later than December 2008, when Plaintiff directly paid the remainder of her outstanding balance.  Plaintiff's claim that Defendants were unjustly enriched is untimely.

## IV.   PLAINTIFF'S CLASS ALLEGATIONS ARE UNTENABLE AS PLEADED.

For the reasons stated above, the Complaint should be dismissed in its entirety, with prejudice.  If any of Plaintiff's claims should survive, however, the subsequent proceedings should be reverse bifurcated so as to expedite the determination of whether this action can proceed on a class basis in light of the numerous fundamental deficiencies in Plaintiff's class allegations.

Plaintiff claims to represent two classes:  (*i*) the Overpayment Class (those who paid for services from Defendants and whose personal information "was accessed without authorization"), and (*ii*) the Identity Theft Class (those whose personal information "was misused as a result of Defendants' data breach").  (Compl. ¶ 58.)  Judge Martinez has already held that the members of the Overpayment Class lack standing because they do not allege misuse of their information, much less any harm resulting from that misuse.  *See Case*, 2016 WL 1622289 at *3-4.  The Identity Theft Class, which is, by definition, wholly subsumed in the Overpayment Class, also lacks standing because they do not allege any concrete harm, as discussed above.  Both alleged classes suffer from, among other things, the overwhelming predominance of individual issues over classwide issues, as well as lack of typicality and ascertainability.

### A.   Plaintiff's Allegations Regarding the Overpayment Class Are Untenable.

Under the Court's previous ruling, members of the Overpayment Class cannot demonstrate an injury in fact sufficient for Article III standing.  *See Case*, 2016 WL 1622289 at *3-4.  This alone is fatal to Plaintiff's attempt to allege this manifestly overbroad plaintiff class.

107904958.1

Furthermore, Plaintiff's claims are not typical of those in this putative class and, accordingly, Plaintiff cannot possibly serve as an adequate representative of the Overpayment Class. The "adequacy of representation" analysis consists of two separate inquiries: "(1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003). A class conflict exists "where the class is such that the court can simply imply that a realistic possibility of antagonism exists." *Boca Raton Cmty. Hosp., Inc. v. Tenet Healthcare Corp.*, 238 F.R.D. 679, 695 (S.D. Fla. 2006), *aff'd sub nom. Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care Corp.*, 582 F.3d 1227 (11th Cir. 2009). "If substantial conflicts of interest are determined to exist among a class, class certification is inappropriate." *Valley Drug Co.*, 350 F.3d at 1189. Here, Plaintiff seeks to base her claims on the filing of a false tax return -- an injury that the rest of the Overpayment Class lacks. This disparity is an insurmountable conflict of interest. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156-58 (1982); *see also, e.g.*, *Wright v. Circuit City Stores, Inc.,* 201 F.R.D. 526, 546 (N.D. Ala. 2001) (class representatives in employment discrimination action inadequate where they did not possess the same interest nor suffer the same injury as the putative class members).

Even aside from that conflict, the individual issues of the Overpayment Class predominate over class issues within the Overpayment Class. Plaintiff's claims on behalf of the Overpayment Class are premised entirely on her subjective belief that the value of the services she received at the hospital were diminished by Aventura's allegedly inadequate safety measures: "Had Brush known of Defendants' inadequate security procedures and methods of protecting and storing her Sensitive Information, she would only have agreed to pay substantially

24

less for Defendants' services, would have disputed her payment with the hospital, or would have sought care elsewhere." (Compl. ¶ 46; *see also* Compl. ¶ 48 ("Brush did not receive the entirety of the services she paid for and, as a result, she paid for data protection services that she didn't receive"); ¶¶ 85, 97 ("Plaintiff and the Overpayment Class did not receive the full benefit of their bargain.")). Accordingly, Plaintiff's theory would require an evaluation of how much "less" each Overpayment Class member would have paid for Defendants' services given the state of Defendants' security systems, resulting in individualized determinations unsuitable for class treatment. *DWFII Corp. v. State Farm Mut. Auto Ins. Co.*, 271 F.R.D. 676, 683 (S.D. Fla. 2010) (individualized evidence concerning the class members' entitlement to reimbursement of healthcare services destroyed predominance); *MRI Assoc. of St. Pete, Inc. v. State Farm Mut. Auto. Ins. Co.*, 755 F. Supp. 2d 1205, 1207-08 (M.D. Fla. 2010) (determination of reasonableness of medical charges inappropriate for class certification). Plaintiff's theory would also require consideration of what, if anything, each putative class member paid to the Hospital for services. The Plaintiff, for example, directly paid the Hospital $183.60. (Compl. ¶ 45.) In many cases, payment is made not by the patient at all, but rather entirely by an insurer or government entity; in many other cases, no payment is made by any party.

### B.     Plaintiff's Allegations Regarding the Identity Theft Class Are Untenable.

As a preliminary matter, the fact that Plaintiff alleges a second class *that consists entirely of a subset* of the Overpayment Class speaks volumes as to Plaintiff's own lack of confidence in the viability of the Overpayment Class. The putative Identity Theft Class would be redundant if the Overpayment Class had standing; it serves as a preemptive line of retreat from the hopeless Overpayment Class.

In any event, the Identity Theft Class also suffers from numerous flaws of its own. It is plain from the Complaint that – like the Overpayment Class – individual issues within this class

will predominate over class issues.  *See Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997) (stating that to maintain a class action, a plaintiff must affirmatively establish that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof") (internal quotations omitted); *see also DWFII Corp.*, 271 F.R.D. at 683. Common issues do not predominate over individual questions if, "as a practical matter, the resolution of [an] overarching common issue breaks down into an unmanageable variety of individual legal and factual issues."  *Bussey v. Macon Cty. Greyhound Park, Inc*., 562 Fed. App'x 782, 789 (11th Cir. 2014) (quoting *Babineau v. Fed. Express Corp*., 576 F.3d 1183, 1191 (11th Cir. 2009)).

The Identity Theft Class contains "[a]ll individuals whose Sensitive Information was misused as a result of Defendants' data breach."  (Compl. ¶ 58.)  Predominance problems abound.  Among such a broadly defined class, determining whether improper data use at Aventura was the actual cause of any one member's purported injury would require thousands of individual inquiries.  *See Jones v. Jeld-Wen, Inc.*, 250 F.R.D. 685, 695 (S.D. Fla. 2008) (finding predominance requirement for putative class not met in customers' breach of warranty and unjust enrichment action against manufacturer/retailer arising from delamination of impact-resistant glass products; causation, *i.e.*, whether manufacturer's defective resin was the legal cause of damages suffered by class members, had to be determined on individualized basis).  Further, even assuming causation could be shown by some class members, such class members will inevitably allege a wide range of damages.  *See Bacon v. Stiefel Labs., Inc.*, 275 F.R.D. 681, 698-99 (S.D. Fla. 2011) (determining insufficient commonality in putative class action where class

members were allegedly victims of fraudulent scheme executed by company's board members to distort share values, because impact of the scheme on individual plaintiffs varied too greatly).

Furthermore, Plaintiff's claims are not (indeed, cannot be *known* to be) typical of the claims of other members of this putative class.  "[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Falcon*, 457 U.S. at 156 (internal citations omitted).  The phrase "identity theft" – though a convenient linguistic shorthand – encompasses an expansive and nebulous universe of criminal conduct. Plaintiff herself acknowledges as much in her Complaint:

> Identity thieves use stolen personal information such as SSNs [Social Security Numbers] for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.   With access to an individual's Sensitive Information, criminals can … commit various types of fraud, including: obtaining a driver's license or official identification card in the victim's name but with the thief's picture; using the victim's name and SSN to obtain government benefits; . . . [identity thieves can] obtain a job using the victim's SSN, rent a house or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest.

(Compl. ¶¶ 39-40.)  Nevertheless, Plaintiff, on the basis of a single fraudulent income tax return allegedly filed under her name, brings a putative action on behalf of a group consisting of all individuals whose Sensitive Information "was misused" as a result of improper data use at Aventura.  (Compl. ¶ 58.)  Plaintiff's own alleged harm cannot be appropriately described as "typical" of the virtually limitless claims that would be captured within this class.  Indeed, representatives of more narrowly drawn classes have failed to demonstrate typicality.  *See, e.g.*, *Love v. Turlington*, 733 F.2d 1562, 1564 (11th Cir. 1984) (affirming district court's denial of class certification where typicality requirement not met by plaintiff challenging constitutionality of Florida skills assessment test administered to all eleventh graders in the state; impact of poor

test results on putative class varied widely where such results were not the sole determinant of whether students were eligible to graduate).

Nor will Plaintiff be able to satisfy the requirement of ascertainability.  Separate from, and in addition to, the requirements of Federal Rule Civil Procedure 23(a), "a plaintiff seeking to represent a proposed class must establish that the proposed class is adequately defined and clearly ascertainable."  *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012) (internal quotations omitted); *see also Karhu v. Vital Pharm., Inc.*, 621 Fed. App'x 945, 947-49 (11th Cir. 2015) (affirming denial of class certification on grounds that plaintiff failed to establish that proposed classes were ascertainable).  A class is not ascertainable unless the class definition contains objective criteria that allow for class members to be identified in an "administratively feasible" way; identifying class members is administratively feasible where it is a "manageable process that does not require much, if any, individual inquiry."  *Id*. at 946 (quoting *Bussey*, 562 Fed. App'x at 787); *see also Stalley v. ADS Alliance Data Sys., Inc.*, 296 F.R.D. 670, 680 (M.D. Fla. 2013) (denying certification because "the Court ha[d] not been presented with reasonable methods for ascertaining the identity of [class members,] individuals who answered [the defendant's phone] calls").  A plaintiff cannot satisfy the ascertainability requirement "simply by asserting that class members can be identified using the defendant's records," nor by merely "proposing that class members self-identify (such as through affidavits)" if such methods are not administratively feasible.  *Karhu*, 621 Fed. App'x at 948.

Identifying alleged victims of data misuse resulting from improper data use at Aventura will require widespread individual inquiry.  Because of the inherent difficulty in determining the root cause of identity theft, even well-intentioned but ineligible individuals (those whose data was inappropriately accessed but never misappropriated) will seek to join the class if they

28

believe their personal information has in any way been misused.   Adequate protection of Defendants' due process rights, however, will demand that Defendants have the opportunity to challenge uncorroborated class member self-identifications.   *Id*. at 948-49.   The result will be a "series of mini-trials just to evaluate the threshold issue of which [persons] are class members." *Fisher v. Ciba Specialty Chem. Corp.*, 238 F.R.D. 273, 302 (S.D. Ala. 2006); *see also Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 270-71 (S.D. Fla. 2003) (citing similar concern in denying class certification).   The allegations in the Complaint specific to Plaintiff only reinforce how administratively infeasible the Identity Theft Class truly is.   Plaintiff simply concludes – eight years after providing personal information to Defendants – that because a single fraudulent tax return was made in her name, the information necessary for this filing (*i.e.*, her Social Security number) was obtained from Defendants.   The alleged Identity Theft Class is thus not ascertainable.   *See Walewski v. Zenimax Media, Inc.*, 502 Fed. App'x 857, 861 (11th Cir. 2012) (affirming district court's ruling that proposed class was not ascertainable where class consisted of all nationwide purchasers of a video game, "mak[ing] it especially difficult to cull appropriate class members . . . without extensive fact-finding").

## <u>CONCLUSION</u>

For the foregoing reasons, the Complaint should be dismissed in its entirety with prejudice.

Respectfully submitted,

/s/ Walter J. Taché
Walter J. Taché, FBN 28850
wtache@cfjblaw.com
CARLTON FIELDS JORDEN BURT, P.A.
100 SE Second Street, Suite 4200
Miami, FL  33131
Tel: (305) 530-0050
Fax: (305) 530-0055
*Attorneys for Defendant Miami Beach Healthcare*
*Group, Ltd d/b/a Aventura Hospital and Medical*
*Center*

/s/ Dan Gelber
Dan Gelber, FBN 512877
GELBER SCHACHTER & GREENBERG
1221 Brickell Avenue, Suite 2010
Miami, FL  33131
Tel: (305) 728-0954
Fax: (305) 728-0951
*Attorneys for Defendant HCA-EmCare Holdings,*
*LLC d/b/a/ Valesco Ventures*

30

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 10th day of June, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and pursuant to Southern District of Florida Local Rule 5.4 and Section 9 of the CM/ECF Administrative Procedures.  I also certify that the foregoing document is being served this date on all counsel of record on the attached Service List, conventionally, via electronic correspondence and U.S. Mail.


/s/ Walter J. Taché
Walter J. Taché, Esq.

31